IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re FTX TRADING LTD., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 22-11068-JTD |
| Debtors. | : | (Jointly Administered) |

| | | |
|---|---|---|
| KIHYUK NAM, *et al.*, | : | Civ. No. 1:24-cv-01175-TLA |
| | : | Civ. No. 1:24-cv-01176-TLA |
| Appellants, | : | Civ. No. 1:24-cv-01178-TLA |
| | : | Civ. No. 1:24-cv-01180-TLA |
| v. | : | |
| | : | |
| FTX TRADING LTD., *et al.*, | : | |
| | : | |
| Appellees. | : | |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

## AMICUS CURIAE BRIEF OF ANDREW R. VARA, UNITED STATES TRUSTEE, IN SUPPORT OF REVERSAL

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
Trial Attorney
Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
E-mail: beth.a.levene@usdoj.gov

ANDREW R. VARA
United States Trustee for Regions 3 & 9
Joseph McMahon
Assistant United States Trustee
Benjamin A. Hackman
Linda Richenderfer (DE # 4138)
Jonathan W. Lipshie
Robert J. Schneider, Jr.,
Trial Attorneys
Department of Justice
Office of the United States Trustee
844 N. King Street, Room 2207
Wilmington, DE 19801
Tel: (302) 573-6491
E-mail: benjamin.a.hackman@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTEREST OF THE UNITED STATES .......................................................1

INTRODUCTION ...............................................................................................1

STATEMENT OF THE CASE ..........................................................................2

I.    FTX Proposes a Chapter 11 Plan that "Deems" Creditors to Release Claims Against Non-Debtors Without Their Affirmative Consent. ..................2

II.   The Court Confirms FTX's Plan with the Third-Party Release..........................4

SUMMARY OF THE ARGUMENT .................................................................5

ARGUMENT ........................................................................................................7

I.    No One Has Argued the Unimpaired Creditors Have Consented to the Third-Party Release. ...................................................................................8

II.   Failure to Opt Out Is Not Consent to a Third-Party Release. .............................8

    A.    State Law Governs Whether Parties Have Agreed to a Release. ..............8

        1.    Under State Law, Indeed Black-Letter Contract Law, Silence Is Not Acceptance. ..............................................................10

        2.    Remaining Silent by Failing to Opt Out Does Not Constitute Acceptance of an Offer to Release Claims Against Non-Debtors Under State Law. .........................................13

    B.    The Bankruptcy Court Contravened Supreme Court Precedent and Violated Creditors' State Law Rights by Treating the Third-Party Release Like a Class Action When It Is Not. ..............................................18

    C.    FTX's Default Theory of Consent Fails. ....................................................22

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor,*
 521 U.S. 591 (1997) ............................................................................................ 20, 21

*In re American Cap. Equip., LLC,*
 688 F.3d 145 (3d Cir. 2012) ......................................................................................10

*In re Arrowmill Dev. Corp.,*
 211 B.R. 497 (Bankr. D.N.J. 1997) .................................................................9, 10, 17

*In re Baby Prods. Antitrust Litig.,*
 708 F.3d 163 (3d Cir. 2013) ......................................................................................21

*Berman v. Freedom Fin. Network,*
 30 F.4th 849 (9th Cir. 2022) .....................................................................................18

*Butner v. United States,*
 440 U.S. 48 (1979) ......................................................................................................9

*In re Chassix Holdings, Inc.,*
 533 B.R. 64 (Bankr. S.D.N.Y. 2015) ....................................................... 10, 16, 17, 19

*Conceicao v. Nat'l Water Main Cleaning Co.,*
 650 F. App'x 134 (3d Cir. 2017) ...............................................................................19

*In re Congoleum Corp.,*
 362 B.R. 167 (Bankr. D.N.J. 2007) ...........................................................................17

*De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente),*
 409 B.R. 842 (Bankr. S.D. Tex. 2009) .........................................................................9

*In re Digital Impact, Inc.,*
 223 B.R. 1 (Bankr. N.D. Okla. 1998) .........................................................................17

*In re Drexel Burnham Lambert Grp., Inc.,*
 138 B.R. 717 (Bankr. S.D.N.Y. 1992)........................................................................22

*Eagle Force Holdings, LLC v. Campbell,*
 187 A.3d 1209 (Del. 2018) ........................................................................................11

*Elfar v. Wilmington Trust, N.A.*,
   No. 20-0273, 2020 WL 7074609 (E.D. Cal. Dec. 3, 2020), *adopted by*
   2020 WL 1700778 (E.D. Cal. Feb. 11, 2021) ...............................................................12

*In re Emerge Energy Servs., LP*,
   No. 19-11563, 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) ...........................16

*Genesis HealthCare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ..............................................................................................20

*Harrington v. Purdue Pharma L.P.*,
   603 U.S. 204, 144 S. Ct. 2071 (2024) ...............................................................*passim*

*In re Hertz Corp.*,
   120 F.4th 1181 (3d Cir. 2024) ............................................................................11

*Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*,
   768 A.2d 983 (Del. Super. Ct. 2000) ..................................................................11

*Houston v. Holder (In re Omni Video, Inc.)*,
   60 F.3d 230 (5th Cir. 1995) ..................................................................................9

*Jacques v. Solomon & Solomon P.C.*,
   886 F. Supp. 2d 429 (D. Del. 2012) ..............................................................12, 13

*Mack v. Mack*,
   No. 4240, 2015 WL 1607797 (Del. Ch. Mar. 31, 2015) ...................................11

*In re Mallinckrodt PLC*,
   639 B.R. 837 (Bankr. D. Del. 2022) ..............................................................22, 23

*Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996) ..............................................................................................19

*McGurn v. Bell Microproducts, Inc.*,
   284 F.3d 86 (1st Cir. 2002) ..................................................................................12

*Meyer v. Uber Technologies, Inc.*,
   868 F.3d 66 (2d Cir. 2017) ....................................................................................18

*Noble v. Samsung Elec. Am., Inc.*,
   682 F. App'x 113 (3d Cir. 2017) ..........................................................................13

*Norcia v. Samsung Telecom. Am., LLC,*
   845 F.3d 1279 (9th Cir. 2017) ............................................................. 13, 14, 18

*Patterson v. Mahwah Bergen Retail Grp., Inc.,*
   636 B.R. 641 (E.D. Va. 2022) ...................................................................*passim*

*In re PWS Holding Corp.,*
   228 F.3d 224 (3d Cir. 2000) ................................................................................ 4

*Reichert v. Rapid Invs., Inc.,*
   56 F.4th 1220 (9th Cir. 2022) ........................................................................... 12

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ............................................................................................ 9

*In re Smallhold, Inc.,*
   No. 14-10267, 2024 WL 4296938 (Bankr. D. Del. Sept. 25, 2024) ..................*passim*

*In re SunEdison, Inc.,*
   576 B.R. 453 (Bankr. S.D.N.Y. 2017) ................................................ 10, 15, 16

*Surtain v. Hamlin Terrace Found.,*
   789 F.3d 1239 (11th Cir. 2015) ........................................................................ 24

*In re Syntax-Brillian Corp.,*
   573 F. App'x 154 (3d Cir. 2014) ...................................................................... 11

*Thomson v. Wooster,*
   114 U.S. 104 (1885) .......................................................................................... 24

*In re Tonawanda Coke Corp.,*
   662 B.R. 220 (Bankr. W.D.N.Y. 2024) ............................................................ 10

*Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.,*
   549 U.S. 443 (2007) ............................................................................................ 8

*United States v. Olano,*
   507 U.S. 725 (1993) .......................................................................................... 23

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018) ............................................................................. 6, 18, 19, 20

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338, 362 (2011) .................................................................................. 21

*In re Wash. Mut., Inc.*,
 442 B.R. 314 (Bankr. D. Del. 2011)................................................................16

*Wood v. Mid-Valley Inc.*,
 942 F.2d 425 (7th Cir. 1991).......................................................................11

**Statutes**

11 U.S.C. § 101.............................................................................................10

11 U.S.C. § 1124(1)......................................................................................3, 8

11 U.S.C. § 1126(a)....................................................................................15, 17

11 U.S.C. § 1126(g)..........................................................................................3

11 U.S.C. § 1129(a)(8)(B).................................................................................3

11 U.S.C. § 1141(b)..........................................................................................9

28 U.S.C. §§ 581-589.......................................................................................1

**Other Authorities**

1 CORBIN ON CONTRACTS § 3.19 (2018)..........................................................12

Fed. R. Bankr. P. 8017(a)(2)..............................................................................1

Fed. R. Civ. P. 23.............................................................................................20

Fed. R. Civ. P. 23(b)(3)...............................................................................20, 21

Fed. R. Civ. P. 23(g).......................................................................................21

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ................1

RESTATEMENT (SECOND) OF CONTRACTS § 17(1) (1981).................................11

RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981)..............11, 12, 17, 18

RESTATEMENT (SECOND) OF CONTRACTS § 69, cmt. c (1981).........................13

4 WILLISTON ON CONTRACTS § 6:67 (4th ed.)................................................12

## INTEREST OF THE UNITED STATES

The United States Trustee is an official of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581-589. He acts in the public interest to protect the integrity of the bankruptcy system. H.R. Rep. No. 95-595, at 88 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6049.

The Supreme Court held in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216-227 (2024), that, except as statutorily provided in asbestos cases, which this is not, chapter 11 plans may not include nonconsensual releases of claims against non-debtors. The United States Trustee submits this brief to share his views on why the third-party release imposed by the confirmation order below is not consensual. *See* Fed. R. Bankr. P. 8017(a)(2).

## INTRODUCTION

The confirmation order below impermissibly imposes a release of claims against third parties on (1) anyone eligible to vote on the bankruptcy plan unless they specifically opt out of the release and (2) anyone whose claim, and associated rights, against the debtor are not altered.

The Supreme Court held in *Purdue* that the Bankruptcy Code does not authorize imposing nonconsensual releases of claims belonging to non-debtors against other non-debtors. *Purdue*, 603 U.S. at 227. The Court did not prohibit chapter 11

plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id.* at 2087.

A consensual third-party release is a side agreement between non-debtors governed by nonbankruptcy law. As the Deputy Solicitor General said in *Purdue*, a bankruptcy court "can acknowledge the parties' agreement" to a third-party release, but the authority for consensual releases is the agreement itself, not the Bankruptcy Code. Transcript of Oral Argument at 6-7, *Purdue*, 603 U.S. 204 (2024) (No. 23-124). If a claim has been "extinguished by virtue of the agreement of the parties," then the court is not using "the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish the property right." *Id.* at 7.

Here, there is no existing release agreement between non-debtors. The confirmation order instead imposes a third-party release on claimants without their affirmative and voluntary consent. The confirmation order thus impermissibly uses the power of the court to bar claims between non-debtors when a valid release does not exist under state law. This was error.

## STATEMENT OF THE CASE

I.    **FTX Proposes a Chapter 11 Plan that "Deems" Creditors to Release Claims Against Non-Debtors Without Their Affirmative Consent.**

This appeal arises from the order confirming the reorganization plan of FTX Trading Ltd. and affiliated entities (collectively, "FTX"). FTX's confirmed plan

2

imposes a nonconsensual third-party release and an accompanying injunction on the "Releasing Parties," defined to include:

- holders of claims whose vote is solicited but who do not opt out, regardless of whether they vote to accept or reject the plan or abstain from voting; and

- holders of claims that are not entitled to vote on the plan because their claims are deemed unimpaired, meaning the plan does not alter their claims, and associated rights, against FTX., 11 U.S.C. §§ 1124(1); 1129(a)(8)(B).

A.0094[1] (Plan § 2.1.172(c) – (f)).  Holders of claims deemed to reject the plan, however, are only bound by the third-party release if they opt in to it.  *Id.* (Plan § 2.1.172(g)); *see* 11 U.S.C. § 1126(g) (claimants who do not receive any distribution from the estate are deemed to reject the plan and are not entitled to vote on it).

The non-debtor "Released Parties" include, among others: (1) FTX Digital Markets, Ltd. ("FTX DM"), a Bahamian subsidiary that is not a chapter 11 debtor in these cases; (2) FTX DM's Bahamian joint official liquidators; (3) an ad hoc group whose members hold certain claims against the FTX.com exchange; and (4) a long list of related parties.  A.0077; A.0079; A.0087; A.0094.

---

[1] Record citations are to Appellant Melamed's Appendix.

The third-party release states that the Releasing Parties "shall be deemed" to have released the Released Parties from, among many other things, any claim relating to FTX, the estates, FTX's business, or the chapter 11 case if the conduct occurred after the petition date.[2]  A.0149.  The plan also includes an injunction barring the released claims.  A.0151.

## II.    The Court Confirms FTX's Plan with the Third-Party Release.

The United States Trustee and the appellants in two of these consolidated appeals (24-1176 and 24-1178) objected to confirmation of the plan in part because the third-party release is nonconsensual and therefore impermissible under *Purdue*.

FTX argued the bankruptcy court should impose the third-party release on those who fail to opt out because the judicial system often binds parties when they fail to act.  *See, e.g.*, Debtors' Omnibus Reply (ECF 26039 at 37).  FTX also urged that the procedure used to impose the release was "akin" to that used in class actions because there were "extensive negotiations with many constituencies," extensive notice, and an opportunity to opt out.  *Id.* at 40-41.

In contrast to those "deemed" to release non-debtor claims based on a failure to opt out, FTX tellingly argued that it "ensured that the Voluntary Release is *in fact*

---

[2] The Third Circuit has allowed exculpation for certain post-petition claims against estate fiduciaries acting within the scope of their duties.  *See In re PWS Holding Corp.*, 228 F.3d 224, 245-47 (3d Cir. 2000).  FTX has conceded that the third-party release includes parties that are not eligible for exculpation.  A.2273-74.

voluntary" for claim holders deemed to reject the plan "by requiring [them] to opt-in to the Voluntary Releases in order to be bound." *Id.* at 38 (emphasis added).

At the confirmation hearing, the bankruptcy court stated that "opt-out releases remain a valid way for a debtor to be able to obtain [third-party] releases through the plan process." A.2277. It stated that the way notice was provided is "acceptable in the context of class action litigation, and I don't see why it would be any different here under the facts and circumstances of this case." *Id.*

The court did not find that there was an actual agreement to the third-party release by those who failed to opt out. Instead, the confirmation order states the third-party release "is *sufficiently* voluntary" and therefore is "appropriate" because "all Releasing Parties had the opportunity to opt out of the release." A.0021 (emphasis added). The order further states that the third-party release "is appropriately narrow" because it excludes claims "arising from gross negligence, willful misconduct, fraud or a criminal act" and claims "arising out of conduct that occurred prior to the Petition Date." *Id.*

Neither FTX nor the bankruptcy court provided any explanation for how the unimpaired claimants, who were given neither the ability to opt out nor opt in, consented to the third-party release.

## SUMMARY OF THE ARGUMENT

The Supreme Court held in *Purdue* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing releases of claims between them.

*Purdue*, 603 U.S. at 209, 227.  But the FTX confirmation order does exactly that.  Instead of acknowledging a release agreement entered between non-debtors, it utilizes the power of the court to "deem" FTX claimants to have released third-party claims, impermissibly altering the relations between non-debtors.

Bankruptcy courts look to state law to determine parties' property rights, including whether they have agreed to give up those rights by releasing claims.  No provision of the Bankruptcy Code preempts state law on this question.  No Code provision defines when non-debtors have consented to release claims against each other.  Thus, applicable state law governs whether there is valid consent to a third-party release.  The bankruptcy court did not find, and FTX did not argue, that such consent exists here under Delaware (or any other state's) law.  Nor would any such argument have merit.  Under black-letter contract law, silence is not consent except in narrow circumstances inapplicable here.

Neither the bankruptcy court nor FTX explained how the unimpaired claimants, who were given no ability to opt out or opt in, consented to the third-party release.

For those who were entitled to vote and did not opt out, the bankruptcy court, forsaking state law, deemed the release consensual because class members may be bound by a court-approved class-action settlement if they do not opt out.  This holding disregards the Supreme Court's admonition that "[c]ourts may not 'recognize a common-law kind of class action' or 'create *de facto* class actions at will.'"  *United*

*States v. Sanchez-Gomez*, 584 U.S. 381, 389 (2018) (cleaned up).  Nor does the analogy show consent.  A class-action settlement is binding not because the class members have consented to it but because members of a certified class action are considered parties for purposes of being bound by the class-action judgment—and that is equally true of adverse judgments as it is of judgments on settlements.

FTX additionally argued that these creditors consented the same way a party purportedly "consents" by failing to timely object in litigation.  Again, this analogy does not show consent.  When parties fail to timely respond in litigation, they are not bound because they have actually consented to the resulting court order, but because of the forfeiture rules that apply to litigating parties.  Further, litigation default rules do not permit relief that is not potentially available in contested litigation.  They are thus not a back door to imposing the nonconsensual third-party releases prohibited by *Purdue*.

## ARGUMENT

The parties and the court below suggested three inconsistent tests for determining whether a third-party release included in a bankruptcy court order is consensual: (1) it is only consensual when there is valid consent under applicable state contract law; (2) parties who do not opt out can be deemed to have consented because class-action settlements are binding on those who do not opt out; and (3) parties can be deemed to have consented based on a default theory, the same way that a litigant may forfeit rights by failing to timely respond in litigation.

The first test is the correct one.  State law governs whether non-debtors have agreed to release each other.  *See infra* Part I.  Nothing in the Bankruptcy Code allows parties to disregard state law when debtors seek to impose third-party releases in their plans.  Under Delaware law, as in other states, silence is not acceptance of an offer other than in limited circumstances inapplicable here.  FTX thus cannot "deem" those who fail to opt out or those who are unimpaired to have released claims, A.0149, because neither type of claimant has agreed to the third-party release.  Indeed, if there were actual consent, the plan would not need to "deem" the release to exist.

## I.    No One Has Argued the Unimpaired Creditors Have Consented to the Third-Party Release.

The FTX plan imposes the third-party release on claimants deemed to accept the chapter 11 plan because their claims against FTX are "unimpaired," meaning those claims, and associated rights, are unaltered.  11 U.S.C. § 1124(1).  There was no ability for these claimants to opt out of the release.  FTX does not argue that these claimants consented in any manner.  Nor did the bankruptcy court find that these claimants consented.  Imposition of the third-party release on these claimants to extinguish their state-law property rights is impermissible under *Purdue*.

## II.   Failure to Opt Out Is Not Consent to a Third-Party Release.

### A.    State Law Governs Whether Parties Have Agreed to a Release.

"[T]he basic federal rule in bankruptcy is that state law governs the substance of claims."  *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443,

8

450-451 (2007) (cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

The rule is no different for third-party releases. They are side agreements between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the creditor agrees to do so." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997). Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Id.*

There is no Bankruptcy Code provision that preempts this otherwise applicable state contract law. *See, e.g.*, *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)). The Bankruptcy Code does not define a "consensual third-party

9

release." *See* 11 U.S.C. § 101.  "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans.  *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015).  And no Code provision authorizes courts to "deem" a non-debtor to have consented to a release when such consent would not otherwise exist as a matter of state law.

For these reasons, "[c]ourts generally apply contract principles in deciding whether a creditor consents to a third-party release."  *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017); *see also Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 684-85 (E.D. Va. 2022); *In re Smallhold, Inc.*, No. 14-10267, 2024 WL 4296938, at *11 (Bankr. D. Del. Sept. 25, 2024); *Arrowmill*, 211 B.R. at 506, 507.  Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent."  *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223).  Accordingly, "any such consensual agreement would be governed by state law."  *Id.*

1.    **Under State Law, Indeed Black-Letter Contract Law, Silence Is Not Acceptance.**

FTX bore the burden to prove that its plan is confirmable.  *In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012).  FTX did not meet this burden because it failed to establish that the third-party release is consensual.  Indeed, the bankruptcy court did not find, and FTX never contended, that a failure to opt out

10

constitutes consent to the third-party release under state contract law. *Compare* Debtors' Omnibus Reply (ECF 26039 at 38) (contending third-party release is "*in fact* voluntary" for creditors who are bound only if they opt in) (emphasis added). And any such contention lacks merit.

Under Delaware law, like in other states, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.[3] *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) (1981) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under Delaware law, overt manifestation of assent . . . controls the formation of a contract.") (cleaned up).

Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance."[4] RESTATEMENT (SECOND) OF CONTRACTS § 69

---

[3] The Court may apply Delaware law because no party below suggested that any other state's law applies. *See, e.g., Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."). Nor did anyone suggest there would be a different outcome under the law of any other jurisdiction, so no choice of law is required. *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 162 (3d Cir. 2014).

[4] Delaware, like many states, follows the Restatement (Second) of Contracts § 69. *See, e.g., Mack v. Mack*, No. 4240, 2015 WL 1607797, at *2 n.6 (Del. Ch. Mar. 31, 2015); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 991 (Del. Super. Ct. 2000).

cmt. a (1981). *See also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3

(D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party

receiving it any duty to speak or deprive the party of its privilege of remaining silent

without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609,

at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose

contract law construes silence as acceptance of an offer, as the general rule."), *adopted*

*by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 CORBIN ON CONTRACTS

§ 3.19 (2018); 4 WILLISTON ON CONTRACTS § 6:67 (4th ed.); *Reichert v. Rapid Invs., Inc.*,

56 F.4th 1220, 1227 (9th Cir. 2022); *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90

(1st Cir. 2002); *Patterson*, 636 B.R. at 686.

There are only very limited exceptions to that principle. "[T]he exceptional

cases where silence is acceptance fall into two main classes: those where the offeree

silently takes offered benefits, and those where one party relies on the other party's

manifestation of intention that silence may operate as acceptance. Even in those

cases the contract may be unenforceable under the Statute of Frauds."

RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

But absent such extraordinary circumstances, "[t]he mere receipt of an

unsolicited offer does not impair the offeree's freedom of action or inaction or

impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states

that silence will constitute acceptance does not deprive the offeree of his privilege to

remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686; *Jacques*, 886 F. Supp. 2d at 433 n.3.

### 2. Remaining Silent by Failing to Opt Out Does Not Constitute Acceptance of an Offer to Release Claims Against Non-Debtors Under State Law.

FTX's plan imposes a third-party release on anyone eligible to vote on the plan who does not return a ballot opting out of the release, whether the person voted to accept or reject the plan or failed to cast a ballot at all. In other words, FTX purports to impose an otherwise non-existent duty to speak on claimants regarding the offer to release non-debtors, and their silence—the failure to opt out—is "deemed" consent. But under black-letter law that silence is not acceptance of the offer to release non-debtors. *See, e.g.*, *Patterson*, 636 B.R. at 688 ("Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent.").

A case from the Ninth Circuit illustrates the point. In *Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017), cited with approval by the Third Circuit in *Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017), the court held that a failure to opt out did not constitute consent to an arbitration agreement. A consumer bought a Samsung phone and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282. The phone came with a Samsung warranty brochure that contained an arbitration provision but gave purchasers the ability to opt out of it without affecting the warranty coverage. *Id.*

When Samsung attempted to enforce the arbitration provision, the Ninth Circuit applied the "general rule" that "silence or inaction does not constitute acceptance of an offer." *Norcia*, 845 F.3d at 1284 (cleaned up). The customer did not agree to arbitrate because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Id.* at 1285 (cleaned up). This was true, even though the customer *did* take action to accept the offered contract from Verizon Wireless. "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, unless an exception to this general rule applies." *Id.* at 1286 (cleaned up).

The Ninth Circuit held that none of the exceptions to this rule applied. *Norcia*, 845 F.3d at 1284-85. There was no state-law duty to respond to the offer, the parties had no prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied even if he opted out of arbitration. *Id.* at 1286.

Here, too, creditors eligible to vote on FTX's plan have not signed a release of their claims against the Released Parties. Nor does their silence manifest an intention to accept an offer to release non-debtors. Creditors have no legal duty to vote on a plan, much less to respond to an offer to release non-debtors included in a plan solicitation, such that their silence constitutes consent to a third-party release. *See, e.g.,*

14

11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison,* 576 B.R. at 460–61 (recognizing that creditors have no duty to speak regarding a plan that would allow a court to infer consent to third-party releases from silence).  Nor have they had any prior course of dealing with the released non-debtors that would impose such a duty.  And they have not retained (or received) any benefits from the non-debtors in exchange for the release that would create a duty to speak.

One bankruptcy court in this district has held that a failure to opt out constitutes consent when a claimant votes—either to accept or reject a plan—but not if they do not vote.  *See Smallhold*, 2024 WL 4296938, at *14.  Although stating it was applying "ordinary contract principles," 2024 WL 4296938, at *3, the *Smallhold* decision did not correctly apply those principles to the question of when silence can constitute consent for those who vote on the plan.

As an initial matter, the *Smallhold* court correctly recognized that a failure to opt out by those who do not vote does not constitute consent.  As that court explained: "It is reasonable to require creditors to pay attention to what the debtor is doing in bankruptcy as it relates to the creditor's rights against the debtor.  But as to the creditor's rights against third parties—which belong to the creditor and not the bankruptcy estate—a creditor should not expect that those rights are even subject to being given away through the debtor's bankruptcy."  *Smallhold*, 2024 WL 4296938, at *12; *see also id.* at *10.  "[B]asic contract principles" require affirmative assent, not inferences drawn from inaction that in fact may reflect only "[c]arelessness,

15

inattentiveness, or mistake." *In re Emerge Energy Servs., LP*, No. 19-11563, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019); *accord SunEdison*, 576 B.R. at 458–61; *Chassix*, 533 B.R. at 81–82; *In re Wash. Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011).

The *Smallhold* court elucidated the point with a hypothetical: a chapter 11 plan requiring that any creditor that did not "check an 'opt out' box on a ballot . . . make a $100 contribution to the college education fund for the children of the CEO of the debtor." *Id.* at *2. As the court observed, "no court would find that in these circumstances, a creditor that never returned a ballot could properly be subject to a legally enforceable obligation to make the $100 contribution." *Id.* None of the cases that allow imposing a non-debtor release based on a failure to opt out "provides any limiting principle that would distinguish the third-party release from the college education fund plan." *Id.*

Contract law likewise does not support imputing consent to a third-party release based on a failure to opt-out by those who vote on the plan. Nevertheless, the *Smallhold* court incorrectly reasoned that because the act of voting on a debtor's plan is an "affirmative step" taken after notice of the third-party release, failing to opt out binds the voter to the release. *Smallhold*, 2024 WL 4296938, at *14. But while voting is an "affirmative step" with respect to the debtor's plan, it is neither an affirmative acceptance of the third-party release—a failure to opt out is still just silence with respect to the release—nor is it a "*manifestation of intention* that silence may operate as

16

acceptance" of the third-party release. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (emphasis added).

A bankruptcy case exists to resolve the debtor's liabilities, not those of third parties. Thus, voting to approve a plan is not an expression of consent to a non-debtor release. *See, e.g., In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007); *Arrowmill*, 211 B.R. at 507; *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998). That is even more true of someone who votes to reject the plan; there no "mutual agreement" as to the plan, much less the third-party release. *See Chassix*, 533 B.R. at 79.

Moreover, impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). "The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction," RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a—in this case, the freedom to vote on a chapter 11 plan. Nor does it "impose on him any duty to speak," *id.*, such as checking an opt-out box when exercising that right to vote on a plan. Just like the hypothetical creditors in *Smallhold* should not be forced to contribute $100 to a college fund merely because they failed to return a ballot that had an opt-out box, *Smallhold*, 2024 WL 4296938, at *2, creditors who cast such a ballot should not be forced to make such a contribution merely because they failed to check that opt-out box. Exercising the right under the Bankruptcy Code to vote on a plan while failing to opt

17

out of a third-party release cannot be equated with affirmative conduct manifesting

consent to the third-party release.

The Ninth and Second Circuit cases cited by *Smallhold* do not support its

conclusion that voting on a chapter 11 plan while remaining silent regarding the non-

debtor release constitutes consent. *Smallhold*, 2024 WL 4296938, at *14 n.60 (citing

*Berman v. Freedom Fin. Network*, 30 F.4th 849, 856 (9th Cir. 2022); *Meyer v. Uber*

*Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Those cases emphasize that notice to

the offeree is a prerequisite to consent "*regardless of apparent manifestation of his consent.*"

*Meyer*, 868 F.3d at 74 (cleaned up; emphasis added). But while notice of a contractual

term is necessary for consent, notice alone is not sufficient. *See, e.g.*, *id.*; *Norcia*, 845

F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a. There must also

be a manifestation of an intent to accept the offer. *See, e.g.*, *Berman*, 30 F.4th at 85;

*Norcia*, 845 F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a. For

the reasons discussed above, the failure to opt out of the third-party release is not

such a manifestation of consent.

## B. The Bankruptcy Court Contravened Supreme Court Precedent and Violated Creditors' State Law Rights by Treating the Third-Party Release Like a Class Action When It Is Not.

The Supreme Court has unanimously admonished: "[C]ourts may not

'recognize a common-law kind of class action' or 'create *de facto* class actions at will.'"

*United States v. Sanchez-Gomez*, 584 U.S. 381, 389 (2018) (quoting *Taylor v. Sturgell*, 553

U.S. 880, 901 (2008)) (cleaned up). Yet, that is exactly what the bankruptcy court did

here by imposing a third-party release on those who failed to opt out on the ground that opt outs "are acceptable in the context of class action litigation." A.2277.

Importantly, consent is not the reason why class members are bound by a court-approved class-action settlement. Rather, once a class has been certified its members "are considered parties to the litigation in many important respects" and "may be bound by the *judgment*." *Sanchez-Gomez*, 584 U.S. at 387 (cleaned up; emphasis added); *accord Sosna*, 419 U.S. at 399 n.8. This is equally true for both adverse judgments after trial and judgments entered on a court-approved class-action settlement.[5] *See, e.g.*, *Sosna*, 419 U.S. at 399 n.8; *Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2017) ("Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion."). As one court explained, "people who fail to respond to class action notices are bound because that is the legal consequence that the Rule specifies, and not on the theory that their inaction is the equivalent of an affirmative joinder in an action." *Chassix*, 533 B.R. at 78.

The Supreme Court has consistently rejected attempts to apply class-action rules to non-class actions that allegedly were "sufficiently similar" to class actions. *See,*

---

[5] *See also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 376, 379 (1996) (holding class members were bound by class-action settlement judgment, explaining "Delaware has traditionally treated the impact of settlement judgments on subsequent litigation in state court as a question of claim preclusion").

*e.g.*, *Sanchez-Gomez*, 584 U.S. at 387, 390; *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). There is no such thing as a "functional class action" that can preclude claims "outside the formal class action context." *Sanchez-Gomez*, 584 U.S. at 389-90.

Here, too, there has been no class action certified under Rule 23. The bankruptcy court cannot unilaterally transplant Rule 23(b)(3)'s class-action opt-out procedure to impose third-party releases in violation of state law. As the Supreme Court warned, courts may not "create *de facto* class actions at will." *Sanchez-Gomez*, 584 U.S. at 389. The bankruptcy court erred by holding that, because Rule 23(b)(3) class-action settlements can bind those who do not opt out, FTX's plan could impose third-party releases for which there is no consent under state law.

Indeed, "the comparison to class action litigation highlights the impropriety of finding releases consensual based merely on a failure to opt out" because in class actions, unlike chapter 11 plan confirmations, "courts must ensure that the class action complies with the unique requirements of Rule 23." *Patterson*, 636 B.R. at 686.

The requirements to certify a class action are many and rigorous to ensure due process to those who are bound by litigation conducted by their class representative. For any class to be certified, a court must find that: there are questions of law or fact common to the class; the class representative's claims are typical of the class's claims; and the class representative "will fairly and adequately protect the interests of the class." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P.

23).  Moreover, the court must appoint class counsel that can best "represent the interests of the class."  Fed. R. Civ. P. 23(g).

For Rule 23(b)(3) class actions—the only kind for which opt outs are permitted, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)—a court must also find both that the common questions "predominate" over individual questions and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Further, class-action settlements require court approval to "protect[] unnamed class members from unjust or unfair settlements affecting their rights."  *Amchem*, 521 U.S. at 623.  Approval may only be granted if, after a hearing, the court finds the settlement is "'fair, reasonable, and adequate' taking into account whether '(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.'"  *Patterson*, 636 B.R. at 687 (quoting Fed. R. Civ. P. 23(e)(2)).  Additionally, the Third Circuit has prescribed several inquiries that courts must make before approving a class-action settlement, including the "degree of direct benefit provided to the class."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

"None of these protections exist in the context of a non-debtor release in a bankruptcy action."  *Patterson*, 636 B.R. at 686.  "[N]o party litigates on behalf of the absent releasing party."  *Id.*; *see also Smallhold*, 2024 WL 4296938, at *12 n.53.  And

"[n]o party with a typical claim has a duty to ensure that he fairly and adequately represents the best interests of the absent releasing party." *Patterson*, 636 B.R. at 686. "Moreover, the absent releasing party does not enjoy counsel that will represent his best interests in his stead."[6] *Id.* If a mere failure to opt out constitutes consent to a non-debtor release in bankruptcy, "then no court carries an obligation to ensure the fairness, reasonableness and adequacy of the relief afforded the absent releasing parties." *Id.* at 687. Indeed, the claim holders here are receiving no compensation from the released non-debtors in exchange for the third-party release.

### C.    FTX's Default Theory of Consent Fails.

FTX's litigation-default theory of consent also fails. A fuller explanation of this theory was articulated prior to the *Purdue* ruling in *In re Mallinckrodt PLC*, 639 B.R. 837, 879-80 (Bankr. D. Del. 2022) (cited in Debtors' Omnibus Reply, ECF 26039 at 37). The *Mallinckrodt* court stated that "the notion that an individual or entity is in some instances deemed to consent to something by their failure to act is one that is utilized throughout the judicial system." *Id.* "When a party to a lawsuit is served with a complaint or a motion, they need to file an answer or otherwise respond, or a judgment is automatically entered against them." *Id.* at 879. The court reasoned that

---

[6] Although the official committee of unsecured creditors owes a fiduciary duty to the unsecured creditor body as a whole, it does not represent any individual creditors, and unsecured creditors often have conflicting interests. *See In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992). Further, the committee's duties relate only to claims against the debtor, not claims against non-debtors.

"[t]here is no reason why this principle should not be applied in the same manner to properly noticed releases within a plan of reorganization." *Id.*

This is flawed reasoning. First, when a party is defaulted in litigation for failure to make a timely filing, it is not because the defaulting party has *consented* to an adverse ruling. Rather, "failure to make timely assertion of [a] right before a tribunal having jurisdiction to determine it" results in *forfeiture* of the right. *United States v. Olano*, 507 U.S. 725, 731 (1993). Forfeiture is unlike waiver, which is an *intentional* relinquishment of a known right. *Id.* at 733. *Cf. Smallhold*, 2024 WL 4296938 at *9 ("In this context, the word 'consent' is used in a shorthand, and somewhat imprecise, way. It may be more accurate to say that the counterparty forfeits its objection on account of its default.").

Second, there is no basis to hold that parties have forfeited claims against non-debtor third-parties based on their silence in response to a debtor's chapter 11 plan. No one has submitted the released claims for adjudication by the bankruptcy court. *See Olano*, 507 U.S. at 731.

And the Supreme Court's *Purdue* decision rejected a fundamental premise of FTX's default theory—that a bankruptcy proceeding legally could lead to the destruction of creditors' rights against non-debtors, so they had best pay attention lest they risk losing those rights. *Smallhold*, 2024 WL 4296938, at *1-2, *10. FTX's premise is wrong because "[u]nder established principles," courts may enter relief against a party who fails to respond "only after satisfying themselves that the relief the

plaintiff seeks is relief that is at least potentially available to the plaintiff" in contested litigation. *Id.* at *2, *13; *see also Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (holding a decree *pro confesso* may only be entered if it "is proper to be decreed"); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered.") (cleaned up).

"After *Purdue Pharma*, a third-party release is no longer an ordinary plan provision that can properly be entered by 'default' in the absence of an objection." *Smallhold*, 2024 WL 4296938, at *2. "It is unlike the listed cure amount where one can properly impose on a creditor the duty to object, and in the absence of such an objection bind the creditor to the judgment." *Id.* That is because, unlike for a creditor's claims against the debtor, the Bankruptcy Code affords no authority to order a release of claims against third parties. Because imposition of a nonconsensual non-debtor release is not relief available through a debtor's chapter 11 plan, it is not "appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release." *Id.* at *10.

Because *Purdue* establishes that a nonconsensual third-party release is "*per se* unlawful," it follows that a third-party release "is not the kind of provision that would be imposed on a creditor on account of that creditor's default." *Id.* at *2. And other than the now-discredited default theory, there is "no other justification for treating the failure to 'opt-out' as 'consent' to the release [that] can withstand analytic

24

scrutiny." *Id.* Rather, an "*affirmative expression of consent* that would be sufficient as a matter of contract law" is required. *Id.* at *11 (emphasis added).

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to strike the nonconsensual third-party release from the confirmation order.

January 17, 2025                     Respectfully submitted,

                                     ANDREW R. VARA
                                     United States Trustee for Regions 3 & 9

                                     By /s/ *Beth A. Levene*
                                             Beth A. Levene
                                             Trial Attorney

RAMONA D. ELLIOTT                    ANDREW R. VARA
Deputy Director/General Counsel      United States Trustee for Region 3
P. MATTHEW SUTKO                     Joseph McMahon
Associate General Counsel            Assistant United States Trustee
BETH A. LEVENE                       Benjamin A. Hackman
Trial Attorney                       Linda Richenderfer (DE # 4138)
                                     Jonathan W. Lipshie
                                     Robert J. Schneider, Jr.,
Department of Justice                Trial Attorneys
Executive Office for
  United States Trustees             Department of Justice
441 G Street, NW,                    Office of the United States Trustee
Suite 6150                           844 N. King Street, Room 2207
Washington, DC 20530                 Wilmington, DE 19801
Tel: (202) 307-1399                  Tel: (302) 573-6491
E-mail: beth.a.levene@usdoj.gov      E-mail: benjamin.a.hackman@usdoj.gov

25

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Bankruptcy Rule 8017(a)(5) in that the brief contains 6,431 words as counted by Microsoft Word.

/s/ Beth A. Levene
Beth A. Levene
Trial Attorney

## CERTIFICATE OF SERVICE

I certify that on January 17, 2025, I caused to be served the foregoing AMICUS

CURIAE BRIEF OF ANDREW R. VARA, UNITED STATES TRUSTEE, IN

SUPPORT OF REVERSAL via the CM/ECF Electronic Filing system, and by

electronic and physical mail to:

Kihyuk Nam
107 Hacdoji-ro, Building 2, 2404
Yeonsu-gu, Incheon, 21997
South Korea
kihyuknam@hanyang.ac.kr

/s/ Beth A. Levene
Beth A. Levene
Trial Attorney